UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORMERICA INTERNATIONAL CORPORATION, a Barbados corporation; and NORMERICA INC., an Ontario corporation,<br><br>Plaintiffs,<br><br>v.<br><br>LITTERPURRFECT, L.P., a California limited partnership; and IN BOCCA AL LUPO, INC., a California corporation,<br><br>Defendants. | Case No.: 3:18-cv-0538-CAB-MDD<br><br>**ORDER ON APPLICATION FOR WRIT OF ATTACHMENT**<br>**[Doc. No. 8.]** |

This matter came before the court on May 3, 2018 for a hearing on Plaintiffs' application for writ of attachment. [Doc. No. 19.] Adam Manna, Thor Urness and John Vaughn appeared for Plaintiffs. Robert Hocker and Ayad Michael Nalu appeared for Defendants.

## BACKGROUND

Plaintiffs Normerica International Corporation and Normerica Inc. (collectively "Normerica") filed their operative complaint on March 22, 2018. [Doc. No. 6.] Defendants filed their answers, with LitterPurrfect filing a counterclaim. [Doc. Nos. 11, 12.] On April 30, 2018, Plaintiffs moved to dismiss the counterclaims. [Doc. No. 18.]

For a number of years, Normerica supplied Costco with all the cat litter products that LitterPurrfect had sold to Costco. At the hearing, the parties represented that prior to the period involved in this dispute, the parties long-standing arrangement had been that Costco would send purchase orders to LitterPurrfect which LitterPurrfect would then forward to Normerica. Upon receipt of the purchase order, Normerica would fulfill and deliver the goods to Costco and, within 30 to 60 days of receiving the goods, Costco would pay LitterPurrfect for the goods received. LitterPurrfect would then, in turn, pay Normerica.

During 2016 and 2017, Normerica began negotiations to purchase LitterPurrfect. As a result of the Ms. Scarvaci's refusal to consent to the sale to Normerica, Messrs. Katz & Wilson sued Ms. Scarvaci claiming that her refusal was unreasonably and, in the alternative, seeking the dissolution of LitterPurrfect.[1] The litigation amongst the partners proceeded before JAMS mediator, the Honorable Irma Gonzalez (ret). [Doc. No. 13-3, 6-116.[2]]

While the litigation between the partners continued, Normerica withdrew its letter of intent to purchase on January 31, 2018. [Doc. No. 16-2.] Along with the withdrawal, Normerica notified LitterPurrfect that, effective February 6, 2018, "all shipments would be COD [cash-on-delivery] and FOB [freight-on-board]" thereby making LitterPurrfect responsible for transportation costs up front. [Doc. No. 13 at 3; Doc. No. 13-3 at 39; Doc. No 16-2.] Wilson informed Judge Gonzalez that it was not financially viable for LitterPurrfect to accept these new shipping terms and that they were "effectively putting it out of business effective February 6, 2018." [Doc. No. 13-3 at 39, 106.]

On February 9, 2018, Ms. Scarvaci gave notice that she was appointing In Bocca Al Lupo, Inc, ("IBAL"), a company wholly owned by her, as the new general partner of

---

[1] LitterPurrfect is owned by three individuals: Keith Wilson (50 percent ownership), Larry Katz (25 percent ownership) and Angelyn Scarvaci nee Katz (25 percent ownership).

[2] Document numbers and page references are to those assigned by CM/ECF for the docket entry.

LitterPurrfect. [*Id.* 39, 112.] On February 28, 2018, Judge Gonzales, confirmed IBAL as the sole general partner of LitterPurrfect.[3] [*Id.* at 49]

Notwithstanding the internal struggles amongst the LitterPurrfect partners and the failed buyout, Wilson and Normerica executed a "Management Agreement" on February 13, 2018. [Doc. No. 13-2 at 6-9; Doc. No. 16-4.] It allowed the two companies to continue to do business with each other, until at least March 15, 2018 and provided Costco:

> will invoice Manager [Normerica] directly for all good shipped to Costco. Manager will guarantee Company [LitterPurrfect] a net margin of nine percent (9%) based off Manager's current selling prices to Company and Company's selling prices to Costco…. The nine percent (9%) will be inclusive of freight (but not of any allowances or commission. Manager will not charge a fee for this service as Manager already processes the invoices and receives orders directly from Costco.

[Doc. No. 13-2 at 7, ¶ 6; Doc. No. 16-4 at ¶ 6. ]

According to the operative complaint, on March 6 and March 8, 2018, Normerica sent two demand letters to LitterPurrfect for immediate payment of $520,431.17 in invoices and $197,092.61 in freight charges. [Doc. No. 6 at 12 ¶¶ 50-52.] On March 12, 2018, Normerica notified LitterPurrfect that it had stopped all shipments effective immediately. [Doc. No. 13-3 at 3, ¶ 8.] In March 2018, LitterPurrfect issued nine checks to Normerica as payment for invoices that have subsequently been returned by the bank. [Doc. No. 16-13.] Keith Wilson appears as the signatory on the checks. [*Id.*]

On April 9, 2018, Plaintiffs filed the pending application for a writ of attachment. [Doc. No. 8.] Plaintiffs seek the writ to secure their claim against Defendants for breach of contract, quantum meruit, and open book account in connection with LitterPurrfect's failure "to pay Plaintiffs for goods delivered in accordance with agreements between the parties." [Doc. No. 8-2 at 6.] Normerica seeks to attach the deposit account of LitterPurrfect and LitterPurrfect's accounts receivable with Costco, in addition to any other

---

[3] Until March 1, 2018, Keith Wilson and Larry Katz were the general partners of LitterPurrfect.

property that it is entitled to attach pursuant to § 487.010(b). [Doc. No. 8.2 at 10.] Plaintiff's assert that there was an informal agreement ("the Agreement") between Normerica and LitterPurrfect, whereby LitterPurrfect would forward purchase orders from third party, Costco, to Normerica; Normerica would fulfill the orders by shipping product to Costco and invoicing LitterPurrfect for the costs of the product, packaging, and transportation; and LitterPurrfect would pay Normerica for the goods and services. [*Id.* at 7.] Plaintiffs concede that the Agreement was not memorialized in writing, but contend that "each purchase order created a separate, stand-alone contract between Normerica and LitterPurrfect." [*Id.* at 7.] According to Plaintiffs, based on the purchase orders Normerica has accepted and fulfilled, the invoices it has sent to LitterPurrfect, and the record of transactions between the companies, LitterPurrfect owed Normerica $1,685,064.50[4] as of April 6, 2018. [Doc. No. 8-1 at ¶ 8.]

Defendants' opposition did not make any substantive arguments in opposition to the writ, rather it focused on making evidentiary objections to the declaration of Ms. Sur Sri, filed in support of the Application. To the extent that there were any deficiencies in the evidence provided in the initial application, the statements made in the declaration of Ms. Sri have since been supported by the documentary evidence attached to the reply. *See* Doc. Nos. 16-1– 16-13. At the hearing Defendants' addressed the necessity of the writ, countering that they never agreed to the informal agreement and asserting that the relationship between the parties is governed by the Management Agreement. Defense counsel argued that, as a result, Normerica in fact owes Defendants money in accordance with the provision of the Management Agreement which provides Normerica will pay LitterPurrfect "a net margin of 9%" and is "inclusive of freight." [Doc. No. 13 at 4.] Plaintiffs' counsel responded that the Management Agreement was not followed by any of the parties and, notwithstanding whether or not it should be applied, Normerica

---

[4] The writ seeks $1,686,264.59, which includes estimated allowable attorney fees of $1,200.00. [Doc. No. 8 at 2.]

manufactured and delivered thousands of tons of cat litter to Costco that it is entitled to be reimbursed for.

# DISCUSSION

### A. *Plaintiffs' Application for Writ of Attachment*

Plaintiffs apply for a right-to-attach order pursuant to California Code of Civil Procedure Code § 487.010(b).[5] Attachment "is a remedy by which a plaintiff with a contractual claim to money (not a claim to a specific item of property) may have various items of a defendant's property seized before judgment and held by a levying officer for execution after judgment." *Waffer Int'l Corp. v. Khorsandi*, 69 Cal. App. 4th 1261, 1271, 82 Cal. Rptr. 2d 241 (1999).

Plaintiffs' application for writ of attachment is governed by California's Code of Civil Procedure §§ 481.010-493.060. *See* Fed. R. Civ. P. 64(a). Generally, California's attachment law requires a court to hold a hearing and issue a right-to-attach order if it finds the following:

> (1) The claim upon which the attachment is based is one upon which an attachment may be issued.
> (2) The plaintiff has established the probable validity of the claim upon which the attachment is based.
> (3) The attachment is not sought for a purpose other than the recovery on the claim upon which the attachment is based.
> (4) The amount to be secured by the attachment is greater than zero.

CAL. CIV. PROC. CODE § 484.090(a). "The burden is on the applicant to establish each element necessary for an attachment order by a preponderance of the evidence." *Hinson v. Calvary Records, Inc.,* 2017 WL 1093918, at *2 (C.D. Cal Mar. 23, 2017) (citations omitted). Here, as analyzed below, Plaintiffs have satisfied these four requirements.

---

[5] The section permits attachment of "all partnership or association property for which a method of levy is provided by Article 2[5] . . . of Chapter 8." CAL. CIV. PROC. CODE § 487.010. Article 2 in turn, allows for the attachment of real property, personal property within the defendant's or a third party's control, business equipment, deposit accounts, and accounts receivable. *Id.* §§ 488.315, 488.345, 488.355, 488.375, 488.455, 488.470.

*1. Plaintiffs' claims are ones upon which an attachment may be issued*

First, Plaintiffs' claims are ones upon which an attachment may be issued. Generally, an attachment may be issued "only in an action on a claim or claims for money, each of which is based upon a contract, express or implied, where the total amount of the claim or claims is a fixed or readily ascertainable amount not less than five hundred dollars ($500) exclusive of costs, interest, and attorney's fees." CAL. CIV. PROC. CODE § 483.010(a).

Here, two of Normerica's claims are for breach of an implied or express contract. Further, the open book account claim and quantum meruit claim are also quasi-contract claims that can support the issuance of a writ of attachment. *See, e.g., ET Publ'g Int'l Inc. v. Pac. Periodicals LLC*, No. CV 10-3108 DSF (AJWx), 2010 WL 11570434, at *3 (C.D. Cal. Oct. 13, 2010) ("under California law, common counts for money had and received, open book account, and account stated are implied-in-law or quasi-contract claims that can support issuance of a writ of attachment") (citing *Hill v. Superior Court,* 16 Cal. 2d 527, 530-531 (1940)); *Jogani v. Superior Court*, 165 Cal. App. 4th 901, 906 (Cal. Ct. App. 2008) (a quantum meruit claim is a quasi-contract claim to recover the reasonable value of services rendered). Moreover, the amount Normerica is seeking to recover is readily ascertainable by reviewing the purchase orders that LitterPurrfect submitted to Normerica, the invoices that Normerica submitted to LitterPurrfect, or Normerica's book account. Normerica asserts that as of April 25, 2018, the amount it seeks to recovery is $1,709,206.72.[6]

*2. Plaintiffs have established the probable validity of their claim*

Second, Plaintiffs have established the probable validity of their claim. "A claim has 'probable validity' where it is more likely than not that the plaintiff will obtain a

---

[6] Normerica requests the Court amend the application to reflect the current amount now due which is $1,709,206.72, as opposed to the $1,686,264.50 originally requested as of April 7, 2018. [Doc. No. 16 at 3.]

judgment against the defendant on that claim." CAL. CIV. PROC. CODE § 481.190. "[T]he court must consider the relative merits of the positions of the respective parties and make a determination of the probable outcome of the litigation." *Loeb & Loeb v. Beverly Glen Music, Inc.*, 166 Cal. App. 3d 1110, 1120, 212 Cal. Rptr. 830, 837 (Cal. Ct. App. 1985).

To prevail on their breach-of-contract claim, plaintiffs must demonstrate (1) the existence of the contract, (2) plaintiffs' performance or excuse for nonperformance, (3) defendant's breach, and (4) resulting damages to plaintiffs. *Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co.*, 116 Cal. App. 4th 1375, 1391, 11 Cal. Rptr. 3d 412, 425 (2004). Plaintiffs identify the purchase orders from LitterPurrfect as offers "that Normerica accepted by shipping the requested goods to Costco and invoicing LitterPurrfect." [Doc. No. 8-2 at 14; Doc. No. 6 at 14, ¶¶ 64-65.] The existence of a contract is further evidenced by the copies of the Management Agreement submitted to the Court. [Doc. No. 13-2 at 6-9; Doc. No. 16-4.] Additionally, none of the parties dispute that Normerica fulfilled its contractual duties by delivering the goods to Costco. And while Defendants contended at the hearing that the amount owed contradicts the express terms of the Management Agreement and that they have not received any monies for the goods Normerica delivered to Costco on their behalf, the only evidence submitted in support of this assertion was the last minute submission of the unsupported declaration of Ms. Scarvaci. In contrast, Plaintiffs have provided the Court with over a thousand pages of purchase orders and invoices, cancelled checks totaling hundreds of thousands of dollars, and multiple declarations in support of their position that Defendants owe them a significant amount of money.

The quasi-contract claims of quantum meruit and open-book account also appear equally viable and neither have been outwardly challenged by Defendants. The purchase orders constituted LitterPurrfect's express request for Normerica to provide goods and services, the provision of which was intended to, and did, benefit LitterPurrfect by providing its sole customer with regular deliveries of goods. *See, e.g., Day v. Alta Beta Med. Ctr.*, 98 Cal. App. 4th 243, 248 (2002) (a quantum meruit plaintiff "must establish

*both* that he or she was acting pursuant to either an *express or implied request* for such services from the defendant *and* that the services rendered were *intended to and did benefit* the defendant.") (*emphasis* in original). Similarly, Normerica possesses detailed business records of the debits and credits between it and LitterPurrfect that reflect the monies owed sufficient to have a valid open-book account claim. *See* Cal. Civ. Proc. Code § 337(a).

Accordingly, the Court concludes that Normerica's claims have probable viability.

### 3. No improper purpose

Third, Plaintiffs identify a proper purpose for their application–to ensure that sufficient funds exist to satisfy a judgment–and Defendants has not demonstrated an improper purpose. Defendants argued at the hearing that Plaintiffs true intent in making this application is "to put them out of business." Defendants' counsel represented that it is the Defendants' belief that Costco has been and is paying Plaintiffs directly for the goods delivered, that Plaintiffs are owed nothing and it is Defendants that are owed payment by the Plaintiffs, pursuant to the Management Agreement. This argument was not however supported by any evidence (by way of documentation or declaration) that Costco is in fact paying Plaintiffs directly for the goods it has received. It is contrary to the only records provided to the Court, which indicate that Plaintiffs have been shipping goods to Costco on behalf of Defendants and the Plaintiffs have not been paid.

### 4. Amount secured is greater than zero

Finally, the amount to be secured is greater than zero. Plaintiffs originally sought a writ of attachment for the amount of $1,686,264.59. [Doc. No.8 at 2.] In its reply brief Normerica now asserts that this amount is "$1,709,206.72, but in no event less than $1,512,114.11." [Doc. No. 16 at 3.] The lesser sum reflects application of the freight charge exemption if the Management Agreement was effective, totaling $197,092.61 during the express effective dates.

Because Plaintiffs have satisfied the four requirements for a writ of attachment, the Court will issue a right-to-attach order. The parties are reminded that attachment is a provisional remedy, not a final one, and the Court's determination here will have no impact

on future dispositive motions or at trial. CAL. CIV. PROC. CODE § 484.100. The Court simply determines, at this stage and based on the evidence before it, that Plaintiffs are more likely than not to succeed on their claim against Defendants for breach of the Consulting Services Agreement.

### B. *Payment of an Undertaking*

Before a writ of attachment issues, plaintiffs must "file an undertaking to pay the defendant any amount the defendant may recover for any wrongful attachment by the plaintiff in the action." CAL. CIV. PROC. CODE § 489.210. The undertaking should be "in an amount sufficient to indemnify [defendant] for damages likely to result from the levy of attachment in the event the attachment ultimately proves to have been 'wrongful.' It is the optimal function of the remedy of attachment to provide the plaintiff with security up to the amount of his claim at a cost that does not render the remedy prohibitive while still affording to the defendant an undertaking in an amount that will adequately satisfy his damages for wrongful attachment." *N. Hollywood Marble Co. v. Superior Court*, 157 Cal. App. 3d 683, 690, 204 Cal. Rptr. 55 (Cal. Ct. App. 1984). If attachment is later deemed wrongful, plaintiffs liability for wrongful attachment "is limited by the amount of the undertaking." CAL. CIV. PROC. CODE § 490.020(b).

The default amount for plaintiffs' undertaking is $10,000.00. CAL. CIV. PROC. CODE § 489.220(a). Here, Defendants have chosen to remain silent on the issue of whether or not Normerica should be required to post an undertaking. Accordingly, the Court finds that the default undertaking of $10,000.00 is reasonable.

## CONCLUSION

Plaintiffs' application for a right-to-attach order is **GRANTED**. [Doc. No. 8.] Plaintiffs have the right to attach the property of Defendant LitterPurrfect in the amount of $1,489,171.98.[7] The property attached shall be limited to any monies Defendants have

---

[7] Setting aside the contested freight charges, this is the amount Plaintiffs assert is owed. [*See* Doc. No. 16 at 11.]

received, or receive in the future, from Costco for any and all LitterPurrfect products supplied and shipped by Normerica. The Clerk of Court is instructed to issue a writ of attachment, in accordance with the above, upon Plaintiffs' posting of an undertaking in the amount of $10,000.00. In the interim, the Temporary Protective Order issued at the hearing remains in effect.

**IT IS SO ORDERED**.

Dated: May 4, 2018

_____
Hon. Cathy Ann Bencivengo
United States District Judge