UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| NORMERICA INTERNATIONAL CORPORATION, a Barbados corporation; and NORMERICA INC., an Ontario corporation,<br><br>Plaintiffs,<br><br>v.<br><br>LITTERPURRFECT, L.P., a California limited partnership; and IN BOCCA AL LUPO, INC., a California corporation,<br><br>Defendants. | Case No.: 3:18-cv-0538-CAB-MDD<br><br>**ORDER ON MOTION FOR SUMMARY JUDGMENT**<br>**[Doc. No. 31.]** |
|---|---|

This matter comes before the Court on Plaintiffs International Corporation and Normerica Inc.'s (collectively "Normerica") Motion for Summary Judgment. [Doc. No. 31.] The motion has been fully briefed and the Court finds it suitable for determination on the papers submitted and without oral argument in accordance with Civil Local Rule 7.1(d)(1).

## I. Background

This following facts are taken from Plaintiffs' First Amended Complaint, the answer to the operative complaint, the documents filed surrounding the application for temporary restraining order and writ of attachment, and the briefings and accompanying exhibits filed in connection with the motion for summary judgment.

For a number of years, Normerica supplied Costco with all the cat litter products that LitterPurrfect ("LP") had sold to Costco. [Doc. No. 6 at 8[1]; Doc. No. 11 at ¶ 16.] For approximately 15 years prior to the period involved in this dispute, the parties long-standing arrangement had been that Costco would send purchase orders to LP which LP would then forward to Normerica. [Doc. No. 6 at ¶¶ 15-17; Doc. No. 8-1 at ¶ 3; Doc. No. 16-5 at ¶¶ 5-6.] Upon receipt of the purchase order, Normerica would fulfill and deliver the goods to Costco and, within 30 to 60 days of receiving the goods, Costco would pay LP for the goods received. LP would then, in turn, pay Normerica. [Doc. No. 6 at ¶¶ 15-17; Doc. No. 8-1 at ¶ 4; Doc. No. 16-5 at ¶¶ 5-6.]

During 2016 and 2017, Normerica began negotiations to purchase LP. [Doc. No. 6 at ¶ 21.] As a result of Ms. Scarvaci's refusal to consent to the sale to Normerica, Messrs. Katz & Wilson sued Ms. Scarvaci claiming that her refusal was unreasonably and, in the alternative, seeking the dissolution of LP.[2] [Doc. No. 6 at ¶¶ 27-30.] The litigation amongst the partners proceeded before JAMS mediator, the Honorable Irma Gonzalez (ret). [Doc. No. 6 at ¶¶ 29-43; Doc. No. 13-3, pgs 6-116.]

While the litigation between the partners continued, Normerica withdrew its letter of intent to purchase on January 31, 2018. [Doc. No. 6 at ¶ 37; Doc. No. 16-2.]

The January 31, 2018 letter from Normerica to LP also informed LP that, effective March 1, 2018, Normerica would be concluding its business relationship with LP under

---

[1] Document numbers and page references are to those assigned by CM/ECF for the docket entry.
[2] LP is owned by three individuals: Keith Wilson (50 percent ownership), Larry Katz (25 percent ownership) and Angelyn Scarvaci nee Katz (25 percent ownership).

2

the current conditions. [Doc. No. 6 at ¶ 46; Doc. No. 16-1 at 2, ¶ 6; Doc. No. 16-2.] The letter stated that effective March 1, 2018, Normerica would require from LP "immediate payment for all packaging on order and in [Normerica's] warehouses" and that beginning on February 6, 2018, "all shipments by Normerica would be on a cash-on delivery (COD) basis and all LitterPurrfect pricing would be freight-on-board (FOB) plant." [Doc. No. 16-2.]

On February 5, 2018, Normerica again notified LP that, effective February 6, 2018, "all shipments would be COD [cash-on-delivery] and FOB [freight-on-board]" thereby making LP responsible for transportation costs up front. [Doc. No. 6 at ¶ 48; Doc. No. 13 at 3; Doc. No. 13-3 at 39; Doc. No. 31-3.] It explained "[t]his means that all orders placed after February 6th, 2018, will require payment in full by LP prior to any orders being shipped by Normerica." [Doc. No. 31-3 at 2.] The letter included an invoice in the amount of $416,440.13 for packaging and inventory currently on hand at the Normerica warehouses. [*Id.* at 3.]

On February 9, 2018, Ms. Scarvaci gave notice that she was appointing In Bocca Al Lupo, Inc, ("IBAL"), a company wholly owned by her, as the new general partner of LP. [Doc. No. 6 at ¶ 41; Doc. No. 13-3 at 39, 112.] On February 28, 2018, Judge Gonzales, confirmed IBAL as the sole general partner of LP, effective March 1, 2018.[3] [Doc. No. 6 at ¶ 43; Doc. No. 13-3 at 49; Doc. No 23 at ¶ 33.]

Notwithstanding the internal struggles amongst the LP partners and the failed buyout, Mr. Keith Wilson, as General Partner of L.P, and Normerica Chief Executive Office, John Kimmel, executed a "Management Agreement" on February 13, 2018. [Doc. No. 6 at ¶ 49; Doc. No. 13-2 at 6-9; Doc. No. 16-4.] It allowed the two companies to continue to do business with each other, until at least March 15, 2018 and provided Costco:

> will invoice Manager [Normerica] directly for all goods shipped to Costco.
> Manager will guarantee Company [LitterPurrfect] a net margin of nine

---

[3] Until March 1, 2018, Keith Wilson and Larry Katz were the general partners of LitterPurrfect.

> percent (9%) based off Manager's current selling prices to Company and Company's selling prices to Costco.... The nine percent (9%) will be inclusive of freight (but not of any allowances or commission). Manager will not charge a fee for this service as Manager already processes the invoices and receives orders directly from Costco.

[Doc. No. 16-4 at ¶ 6.] It also provided that "Company agrees to reimburse any pre-approved out of pocket expenses incurred by the Manger in connection with the Services." [*Id.* at ¶ 7.] According to a provision contained within the Management Agreement it was to be:

> the final, complete and exclusive agreement of the parties with respect to the subject matter hereof and supersedes and merges all prior or contemporaneous representations, discussions, proposals, negotiations, conditions, communications and agreements, whether written or oral, between the parties relating to the subject matter hereof and all past courses of dealing or industry custom. No modification of or amendment to this Agreement shall be effective unless in writing and signed by each of the parties.

[*Id.* at ¶ 15.]

On March 6, 2018, Normerica sent a demand letter to LP for immediate payment of $520,431.17 and attached outstanding invoices for labels, packaging pails, jugs, sleeves and corrugate. [Doc. No. 6 at ¶ 50; Doc. No. 31-5.] The letter states "Normerica was explicitly clear that it required immediate payment for all packaging on orders and in our warehouse. As such, we demand payment for the two outstanding invoices totaling $520,431.17." [Doc. No. 31-5 at 2.] The letter concludes by stating LP "was to arrange and pay for freight from Normerica's facilities. This has also yet to transpire and as a result, Normerica demands further payment in the amount of $197,092.61 in freight charges." [*Id.*]

On March 12, 2018, Normerica notified LP that it had stopped all shipments effective immediately. [Doc. No. 13-3 at 3, ¶ 8; Doc. No. 31 at 12.]

On March 23, 2018, Normerica sent a letter terminating its relationship with LP for all products shipped to Costco Canada. [Doc. No. 31-7.]

In March 2018, LP issued nine checks to Normerica as payment for invoices that have subsequently been returned by the bank. [Doc. No. 16-13.] Mr. Keith Wilson appears as the signatory on the checks. [*Id.*]

Normerica invoiced LP $1,095,673.98 for its fulfillment of the purchase orders – exclusive of the disputed freight and packaging charges. [Doc. No. 16-5 at ¶¶ 5-9; Doc. No. 16-6; Doc. No. 16-7 – 16-12.] It is not clear to the Court if the exact dollar amount being sought by Plaintiffs' for the goods delivered is still in dispute.[4]

On April 9, 2018, Plaintiffs sought a writ of attachment which was granted by the Court on May 4, 2018. [Doc. Nos. 8, 21.]

Plaintiffs now move for summary judgment and a finding of liability on its alternative claims for breach of contract, quantum meruit, and open book account, contending the undisputed facts prove it is entitled to recovery of $1,709,206.72 from Defendants.[5] The amount Plaintiffs seek is inclusive of $197,092.61 freight charges, $416,440.13 worth of jugs, sleeves, and corrugate, and $1,095,673.95 in charges for fulfillment of purchase orders during the period in dispute.

Defendants counter that the motion for summary judgment should be denied because Plaintiffs incorrectly assume that the Management Agreement does not apply. Defendants also contend that, notwithstanding the applicability of the Management Agreement, there are triable issues of fact concerning damages. Further, Defendants argue that the motion should be deferred or denied pursuant to Federal Rule of Civil Procedure 56(d) until after they complete discovery. Finally, Defendants request the Court stay this action until Normerica either stays or dismisses the duplicative Canadian action.

---

[4] Initially Defendants disputed this calculation because it had not received payment from Costco for the delivered cat litter. *See* May 3, 2018 Declaration of Angelyn Scaraci calculating that Normerica supplied Costco with goods for invoices in amounts totaling $840,952.43. [Doc. No. 31-4.]

[5] Ms. Sue Sri, Executive Vice President of Normerica International Corporation and Normerica Inc., attests that as of April 25, 2018, LP owes $1,709,206.72. [Doc. No. 16-5 at ¶ 4]

## II. Legal Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P 56(c). Entry of summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

The moving party has the initial burden of "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, "which it believes demonstrate the absence of a genuine issues of material fact." *Id.* at 323. If the moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense. *See Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.* 210 F.3d 1099, 1103 (9th Cir. 2000); *High Tech Gays v. Defense Indus. Sec. Clearance Office,* 895 F.2d 563, 574 (9th Cir. 1990); *Cline v. Indus. Maint. Eng'g. & Contracting Co.,* 200 F.3d 1223, 1229 (9th Cir. 1991)  Rule 56(e) requires "the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S at 324. The nonmoving party cannot "rest upon mere allegations or denials of his pleadings." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

The mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *Id.* at 247-248. "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The inquiry is whether "the evidence presents a sufficient disagreement to require submission to a jury or whether

6

3:18-cv-0538-CAB-MDD

it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-252. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. *Adicks v. S.H. Kress & Co.*, 398 U.S. 144, 158-159 (1970).

## III. Discussion

### A. Breach of Contract Claim

To prevail on their breach-of-contract claim, plaintiffs must demonstrate (1) the existence of the contract, (2) plaintiffs' performance or excuse for nonperformance, (3) defendant's breach, and (4) resulting damages to plaintiffs. *Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co.*, 11 Cal. Rptr. 3d 412, 425 (2004).

Here, the parties do not dispute that Normerica delivered goods to Costco on LP's behalf and that Normerica must be paid for these deliveries. They strongly disagree however as to what conduct or agreement controls the terms of their relationship - the individual purchase orders, the parties' past conduct, or the Management Agreement. The parties have presented conflicting evidence as to which contract controls and disagree regarding the damages calculation.

Plaintiffs contend that each purchase order could be "construed as a series of express contracts…or a broader implied-in-fact contract created by the parties' conduct." [Doc. No. 31-1 at 14-20.] According to Plaintiffs, it invoiced LP $1,095,673.98 based on the purchase orders Normerica has accepted and fulfilled, the invoices it has sent to LP, and the record of transactions between the companies. Additionally, Plaintiffs argue that the January 31, 2018, letter Normerica sent to LP effectively changed the terms of the relationship between the parties and obligated LP to pay $197,092.61 for freight for goods delivered to Costco. [*Id.*] As to damages, Plaintiffs claim they are entitled to incidental damages in the amount of $416,440.13 for costs associated with packaging it was required to order in advance. [*Id.* at 21-23.] Plaintiffs' position is that since LP's actions "imperiled its relationship with Normerica by nonpayment such that Normerica's only realistic reasonable option was to terminate its relationship with LP….it is unreasonable to expect Normerica to bear the cost of LP's custom packaging." [*Id.* at 22.]

Defendants counter that they never agreed to the informal agreement and assert the relationship between the parties is governed by the Management Agreement that Messrs. Kimmel and Wilson executed on February 13, 2018. [Doc. No. 53 at 5-8.] Defendants assert that since the Management Agreement expired on March 15, 2018, any invoices issued between February 13, 2018 and March 5, 2018 should be governed by its terms. Regarding damages, Defendants argue that if the Management Agreement is found to be enforceable then it is they who are entitled to damages under it as the relevant provision provides Normerica will pay LP "a net margin of 9%" and is "inclusive of freight." [*Id.* at 8.] Further, Defendants contend that the invoices for $416,440.13 packaging and $197,092.61 for freight lack a corresponding purchase order from LP and constitute double charging. [*Id.* at 9-11.] Relatedly, Defendants assert that the cost of freight was included in Normerica's unit costs as evidenced by Normerica's invoices. [*Id.* at 11-12.] Finally, Defendants submit that Plaintiffs are using the same jugs and corrugate it charged LP for in conjunction with its own new product – Simply Purrfect, thereby raising a triable issue as to whether the $416,440.13 invoice is valid. [*Id.* at 12-13.]

Without getting into the weeds of the parties conflicting arguments, it is clear from the background the Court has set forth above that there are many contested factual issues regarding which contract governs the period in question and to what if any damages Plaintiffs are entitled. As a consequence summary judgment on the breach of contract claim is not appropriate. Accordingly, Plaintiffs' motion on this claim is **DENIED**.

**B. Quantum Meruit and Open Book Claims**

If there are triable issues of fact as to the breach of contract claims it necessarily follows that there are triable issues of fact for the quantum meruit and open book claims. *See e.g., Jogani v. Superior Court*, 81 Cal. Rptr. 3d 503, 507 (2008) (a quantum meruit claim is a quasi-contract claim to recover the reasonable value of services rendered); *Day v. Alta Bates Med. Ctr.,* 98 Cal. App. 4th 243, 248 (2002) ("[t]he theory or quasi-contractual recovery is that one party has accepted and retained a benefit with full appreciation of the facts, under circumstances making it inequitable for him to retain the benefit without

payment of its reasonable value.") (internal citations omitted); *HDR Envtl., Operations & Constr., Inc. v. Deason,* Case No. 15CV1402 JAH (NLS), 2018 WL 1627229, at *9 (S.D. Cal. Mar. 29, 2018) ("to prevail on an open book account, a plaintiff must demonstrate show that plaintiff and defendant had financial transactions; that plaintiff kept an account of the debits and credits involved in the transactions; that defendant owes money on the account; and the amount of money defendant owes plaintiff. However, under California law, money due under an express contract cannot be recovered in an action claiming an open book account unless there is a contrary agreement by the parties.).

The amount Plaintiffs are entitled to be paid for the reasonable value of their services and whether or not an express contract exists between the parties is in dispute. Accordingly, Plaintiffs' motion for summary judgment on these claims is **DENIED**.

## IV. Conclusion

For the reasons set forth above Plaintiffs' motion for summary judgment [Doc. No. 31] is **DENIED**.

It is **SO ORDERED**.

Dated: September 19, 2018

Hon. Cathy Ann Bencivengo
United States District Judge